# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RONALD REEL                                                    CIVIL ACTION

VERSUS                                                         NO. 15-5156

N. BURL CAIN                                                   SECTION: "F"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Ronald Reel, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana. On January 23, 2009, Reel was indicted in the Parish of Orleans for one count of aggravated rape and one count of unauthorized entry of an inhabited dwelling.[1] Reel was tried before a jury on March 15 and 16, 2010, and was found guilty of the lesser charge of forcible rape and guilty as charged of count two.[2] Reel's motions for new trial and post-judgment verdict of acquittal were denied.[3] The court sentenced Reel to 40 years at hard labor as to count one and six

---

[1] St. Rec. Vol. 1 of 6, Bill of Indictment, 1/23/09.
[2] St. Rec. Vol. 1 of 6, Jury Verdicts, 3/16/10; Minutes, 3/15/10; Minutes, 3/16/10; Vol. 4 of 6, Trial Transcript, 3/15/10; St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, 3/16/10.
[3] St. Rec. Vol. 1 of 6, Motion for New Trial, 4/23/10; Motion for Post Verdict Judgment of Acquittal, 4/23/10; Sentencing Minutes, 6/10/10; Vol. 4 of 6, Transcript, pp. 8-9, 6/10/10.

years at hard labor as to count two.[4]  The state filed a multiple bill under Louisiana's Habitual Offender Law (La. Rev. Stat. § 15:529.1).[5]  At a hearing on August 13, 2010, the state trial court found Reel be a triple multiple offender.[6]  On September 3, 2010, the state trial court vacated the sentence as to count one and resentenced Reel to 80 years at hard labor to run concurrent with any other sentence.[7]  Petitioner's motion to reconsider sentence was denied.[8]

Reel filed a direct appeal to the Louisiana Fourth Circuit, alleging the following claims: (1) the evidence was insufficient to support the guilty verdict as to count one; (2) the evidence on the record was insufficient to support the trial court's adjudication of petitioner as a third felony offender; and (3) the trial court failed to advise petitioner of the delays for applying for post-conviction relief.[9]  Petitioner filed a pro se supplemental brief in which he alleged the following additional claims: (4) the prosecutor improperly amended the bill of indictment; (5) prosecutorial misconduct in presenting false evidence at trial; and (6) prosecutorial misconduct in soliciting false testimony and allowing false testimony to go uncorrected at trial.[10]  The court denied petitioner's appeal on October 3, 2012.[11]  Petitioner's pro se motion for rehearing was denied.[12]  Reel then filed a writ application to the Louisiana Supreme Court which was denied on April 12, 2013,

---

[4] St. Rec. Vol. 1 of 6, Sentencing Minutes, 6/10/10; Vol. 4 of 6, Transcript, 6/10/10.
[5] St. Rec. Vol. 1 of 6, Multiple Bill, 6/10/10.
[6] St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 8/13/10; Vol. 4 of 6, Transcript, 8/13/10.
[7] St. Rec. Vol. 1 of 6, Judgment, 9/3/10; Re-Sentencing Minutes 9/3/10; Vol. 4 of 6, Transcript, 9/3/10.
[8] St. Rec. Vol. 1 of 6, Minutes, 10/28/10
[9] St. Rec. Vol. 5 of 6, Appeal Brief, 2010 KA 1737, 10/25/11.
[10] St. Rec. Vol. 5 of 6, Supplemental Brief, 4/12/12 (dated 4/9/12).
[11] State v. Reel, 126 So. 3d 506 (La. App. 4th Cir. 2012); St. Rec. Vol. 5 of 6, 4th Cir. Order, 2010-KA-1737, 10/3/12.
[12] St. Rec. Vol. 5 of 6, Pro Se Application for Rehearing, 2010 KA 1737, 10/15/12 (dated 10/11/12); 4th Cir. Clerk of Court Letter, 10/24/12.

without explanation.[13]  Reel's conviction became final 90 days later, on August 12, 2013, when he did not file a writ application with the United States Supreme Court.[14]

On February 21, 2014, petitioner filed an application for post-conviction relief with the state district court in which he raised four claims of ineffective assistance of counsel as well as the following claims: (1) he was denied his right to a speedy trial; (2) he was denied his right to self-representation; (3) he was denied his right to confrontation and cross-examination.[15]  The state trial court denied petitioner's application on June 30, 2014, finding petitioner's "claims raised are without merit."[16]  The Louisiana Fourth Circuit Court of Appeal denied petitioner's application for supervisory writ finding "no error in the district court judgment of June 30, 2014."[17]  The Louisiana Supreme Court denied petitioner's application for review without stated reasons.[18]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief alleging the following claims: (1) insufficient evidence as to count one; (2) the prosecutor improperly amended count two of the indictment; (3) the prosecutor presented false evidence at trial; (4) denial of right to speedy trial; (5) denial of right to self-represent; (6) the prosecutor solicited false testimony and allowed false testimony to go uncorrected at trial; (7) insufficient evidence to support petitioner's adjudication as a third multiple offender; (8) denial of the right to confrontation and cross-examination; and (9) ineffective assistance of counsel in that counsel (a) failed to object to other crimes evidence or move for a mistrial and failed to object to and solicited hearsay evidence ; (b) failed to adequately investigate the case and interview or call witnesses; (c)

---

[13] State v Williams, 111 So.3d 1101 (La. 2013) (mem.); St. Rec. Vol 5 of 6, La. Supreme Court Order, 2012-KO-2433, 4/12/13; Application for Writ, 12 KO 2433, 11/14/12, 11/5/12.
[14] See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(a).
[15] St. Rec. Vol. 6 of 6, Application for Post-Conviction Relief, signed 2/18/14.
[16] St. Rec. Vol. 1 of 6, Minute Order 6/30/14.
[17] St. Rec. Vol 6 of 6, 4th Cir. Order, 2014-K-1001, 11/7/14; State v. Reel, 2014-K-1001, (La. App. 4th Cir. 2014).
[18] State ex rel. Reel v. State, 178 So. 3d 585 (La. 2015); St. Rec. Vol.6 of 6, La. Supreme Court Order, 2014-K-1001, 10/2/15.

failed to consult with experts; and (d) failed to object or move for a mistrial when the prosecution made remarks during its closing argument regarding petitioner's failure to testify.[19]

The state does not challenge the timeliness of petitioner's application. The state argues that petitioner's claim related to his adjudication as a third time habitual offender is procedurally barred. The state argues that the remaining claims lack merit.[20]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[19] Rec. Doc. 4.
[20] Rec. Doc. 19.

4

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>  If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. <u>White</u>, 134 S. Ct. at 1701.

## <u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

Testimony at trial revealed that on April 9, 2006, the victim, T.P.[1], lived with her brother, W.P., at his home in the 6600 block of Brunswick Court in New Orleans. On the night of April 9, 2006, W.P. received several cell phone calls from the defendant, asking to speak with the victim and wanting to know where she was. The following morning, W.P. left for work at 6:30 a.m., leaving the victim home alone. W.P. did not give the defendant permission to enter his house.

[1]We refer to the victim by her initials, T.P., or as "the victim," and to her brother by his initials, W.P., in order to protect the victim's privacy.

The victim testified that she and the defendant met in 2004, and had an off and on romantic relationship for one and one-half years. The defendant was a violent person and began abusing the victim shortly after they met. Although the defendant stayed with her at her brother's Brunswick Court house on occasion, he did not live there. The victim asked the defendant to leave on many occasions, but he refused, telling her that because she did not own the house, her brother would have to put him out. He also warned her that if her brother put him out, he would kill her and her family. The victim made several domestic abuse complaints against the defendant. On one occasion, he was jailed for five months, but as soon as he was released, he returned to the Brunswick Court house. The defendant continued to abuse her.

When Hurricane Katrina hit the city, T.P. evacuated to New Iberia for about two weeks. She did not tell the defendant where she was relocating, but he tracked her down.

The day before the rape, the defendant called the victim to tell her that he was going to leave her alone and move on with his life. When the victim agreed that was a good idea, the defendant became enraged, cursing and calling her names. Every time she hung up the phone, he would call again and rant and rave. His

persistent calls were upsetting to the point that she took her phone off the hook. When he could not speak to the victim, the defendant began calling her brother.

When she awoke the next morning, the defendant was in her bedroom. He was wearing hospital gloves and brandishing a gun. According to T.P., the defendant gained entrance to the house by breaking the back door and using a knife to pick the lock. The defendant told her that he came to kill her by shooting her four times in the head. He told her that after he killed her, he intended to set the house on fire. The victim begged for her life, but the defendant explained that if he did not kill her, she would call the police and have him put in jail. He also told her that he spent the previous night in the back yard. Next, the defendant told her to follow him to the back yard so "[he could] show [her] what else [he] had for [her]." The defendant told the victim: "That's what I have for you right there, the gas can."

When the two went back in the house, the defendant admitted that he had cut the wires on the surveillance cameras. He then raped her at gunpoint as she begged him not to kill her. The defendant taunted her about killing her because if the police arrested him, he would go to jail for the rest of his life. Then he told her, You ain't going to feel it. I'm going to shoot you in your head four times, and I'm going to set the house on fire because I can't leave no evidence ... without evidence, there's no case." After offering the defendant financial help and assuring him she would not call the police, the defendant allowed the victim to go to work. He continued to threaten her, telling her that if she said anything to her neighbors, he would kill them.

The defendant rode the bus with the victim to work. As she was getting off the bus, the defendant told her, "... don't forget" as he patted the gun in his pocket. The defendant remained on the bus, and when the victim was certain the defendant was gone, she ran to her sister's house two blocks away. She told her sister what happened. Her sister called her brother, W.P., and he and the victim returned to their home. The victim did not tell her brother she was raped because she was ashamed; instead, she told him that the defendant broke into the house and threatened to kill her. W.P. stated that when he and the victim returned to their Brunswick Court home, he noticed that the wires to the security cameras mounted on the back of his house had been cut. Prior to that morning, the security cameras were operational. T.P. told the investigating female officer that the defendant "forced her to have sex with him." She was transported to the hospital for medical testing.

Detective Mike McCleery conducted the investigation of the unauthorized entry and rape at the Brunswick Court residence. Detective McCleery spoke with officers who had arrived at the scene before him and ordered the crime lab to examine and photograph the scene. Detective McCleery also spoke to the victim and her brother. The victim was very nervous, fearing the suspect would return to the residence. According to the detective, he found no evidence of forced entry.

As a result of his conversations with the victim and W.P., Detective McCleery developed the defendant as a suspect in the crimes. Detective McCleery identified the defendant in court and also identified several photographs taken at the scene, including among others, photos of gas cans located in the backyard of the residence and the victim's bedroom, an aluminum can located in the victim's

bedroom, a photo of the disabled surveillance camera, a picture of a pair of wire cutters found in the backyard as well as a photo of a hat and hospital gloves, which were sitting next to the victim's bed.

Detective McCleery transported the victim to Charity Hospital for a sexual assault test. The test proved positive for the presence of seminal fluid. While at the hospital, the victim identified the defendant as her attacker from a picture presented by the detective. Detective McCleery prepared an arrest warrant for the defendant and a search warrant, which sought a saliva sample for DNA comparison with the seminal fluid retrieved from the victim's body. NOPD Officer Joseph Pollard, an expert in fingerprint identification and comparison, found that the fingerprints recovered in this case were not suitable for comparison.

Registered nurse sexual assault examiner, Andrew Mahoney, examined the victim on April 10, 2006. Initially, the victim locked herself in the examination room because she was afraid of being in the room alone. After the victim allowed Mahoney to enter the room, he found her awake, alert, frightened and talkative as she related the details of the rape. The victim's examination did not reveal any injuries; however, he testified that the absence of injury was not proof that sexual contact was consensual. Blood testing was negative for the presence of drugs in the victim's body.

The State and defense stipulated that Erica Sparacino was an expert in DNA testing, and that if she were called to testify, she would verify that she tested all of the evidence associated with the sexual assault examination in this case. Further, the tests results proved that the defendant was the donor of the seminal fluid recovered from the victim.

Don Hancock, telephone supervisor for the Orleans Parish Sheriff's Office, explained that he maintained the inmate phone system at the jail. His office records all inmate phone calls, and all records of those calls are archived. Hancock identified State's exhibit 39 as the CD of the phone calls made by the defendant from September 23, 2008, through March 23, 2009. The State played portions of several phone calls made by the defendant while he was in jail.[21]

## Petitioner's Claims

## Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence to support his conviction of forcible rape. Petitioner argues that the state did not prove penetration.

Petitioner raised this claim on direct appeal. In the last reasoned state court judgment addressing petitioner's claim of insufficient evidence, the Louisiana Fourth Circuit found sufficient evidence to establish that a forcible rape occurred under Jackson v. Virginia, 443 U.S.

---

[21] Reel, 126 So. 3d at 509-12; St. Rec. Vol. 5 of 6, 4th Cir. Order, 2010-KA-1737, pp. 6-9, 10/3/12.

207, 319 (1979), and related state laws.[22]  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when

the last state court judgment does not indicate whether it is based on procedural default or the

merits of a federal claim, the federal court will presume that the state court has relied upon the

same grounds as the last reasoned state court opinion).  The court explained in part[23]:

> The defendant's arguments are groundless. At trial, the prosecutor asked the victim:
> Q. And why didn't you want to tell your brother [about the rape]?
> A. Tell my brother I been raped? ... I didn't want my brother and them to know [someone] raped me.
> The foregoing victim's response to the State's question identifies the sexual act as rape.
> The defendant's argument that the State did not prove penetration is also without merit.  The victim testified that the defendant raped her.  Rape is defined in pertinent part as "... the act of ... vaginal sexual intercourse with a male or female person committed without the person's lawful consent."  La. R.S. 14:41.  The Merriam Webster Dictionary defines vaginal sexual intercourse in part as: "... penetration of the vagina by the penis."

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this

Court must defer to the state court's decision rejecting this claim unless petitioner shows that the

decision was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor

v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d

639 (5th Cir. 2000).  For the following reasons, the Court finds that Reel has made no such

showing.

As the Louisiana Fourth Circuit correctly noted, claims of insufficient evidence are to be

analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson,

the United States Supreme Court held that, in assessing such a claim, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[22] Reel, 126 So.3d at 509-12, St. Rec. Vol. 5 of 6, 4th Cir. Order, 2010-KA-1737, pp. 6-9, 10/3/12.
[23] Reel, 126 So. 3d at 513; St. Rec. Vol. 5 of 6, 4th Cir. Order, 2010-KA-1737, p. 8, 10/3/12.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319. Accordingly, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)) (emphasis added); <u>see also</u> <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential <u>Jackson</u> standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2152 (2012); <u>see also</u> <u>Coleman v. Johnson</u>, 132 S.Ct. 2060, 2062 (2012) (per curiam).

Petitioner was charged with aggravated rape but found guilty of forcible rape. At the time of these events, the charge of forcible rape under La. Rev. Stat. § 14:42.1 as charged against Reel was defined in relevant part as follows:[24]

> A.     Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
> (1)     When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. [. . .]

---

[24] La. Rev. Stat. § 14:42.1 was amended by La. Acts 2015, No. 184, § 1 and No. 256, §1 to redefine forcible rape as second degree rape.

Louisiana law defines the term "rape" as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. Rev. Stat. § 14:41(A). "Emission is not necessary, and any sexual penetration ... however slight, is sufficient to complete the crime." La. Rev. Stat. § 14:41(B). The term "oral sexual intercourse means the intentional engaging in any of the following acts with another person: (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender. (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim." La. Rev. Stat. § 14:41(C).

Thus, to convict Reel of forcible rape, the State had the burden of proving as to each count: (1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. Rev. Stat. § 14:42.1; La. Rev. Stat. § 14:41; State v. Richardson, 425 So. 2d 1228, 1231 (La. 1983). Under Louisiana law, the credible testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even when the state does not introduce medical, scientific or physical evidence to prove commission of the offense by the defendant. State v. Johnson, 706 So. 2d 468, 475 (La. App. 4th Cir. 1997).

In the instant case, the state presented testimony of T.P. who testified that she woke up with Reel standing over her with a gun. T.P. testified that Reel threatened to shoot her in the head and then set the house on fire to destroy any evidence of his crimes. He took her outside to show her a gas can. When they returned inside, Reel told her to bend over, "like you know what time it is."[25] T.P. begged Reel not to touch her and begged for her life. She testified that she did not

[25] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, pp. 52-53, 3/16/10.

12

resist because "I aint' had no other choice."[26]  T.P. testified that he had the gun pointed at her when he was raping her and that she was "scared he was probably going to shoot [her] while he was doing it."[27]  She said he did not use a condom.  She said it lasted one to two minutes and when it was over, he wiped himself with a towel and fixed his clothes.  In response to the prosecution's question as to why she didn't tell her brother, T.P. responded, "Tell my brother I been raped?  I didn't want my brother and them to know nobody had raped me…."[28]  T.P. explained that she didn't tell her brother Reel raped her because she was ashamed.  She testified that she told the female police officer that Reel forced her to have sex with him and that she also told the nurses at the hospital.  McCleary testified the sexual assault kit was positive for seminal fluid.  Mahoney, the sexual assault nurse examiner, testified that he took a vaginal swab which tested positive for the presence of seminal fluid.  Reel stipulated that he was the donor of the seminal fluid.

The foregoing was evidence of penetration, the sexual act as rape, and threats of physical violence.  The elements of the crime and petitioner's guilt was established through the victim's testimony, and it is clear that a victim's testimony alone is generally sufficient evidence to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 9430310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995).  Although petitioner claims that the victim lied, the jury obviously found her testimony credible.  Where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th

---

[26] Id., at p. 52.
[27] Id., at p. 53.
[28] Id., at p. 59.

Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. A rational trier of fact could easily have found that Reel forcibly raped T.P. The jury was well within its authority to make credibility determinations as to the testimony of the witnesses. It is not for this court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Therefore, petitioner cannot show that the state court's decision rejecting his sufficiency of the evidence claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to relief as to this claim.

## Improper Amendment of the Indictment

Petitioner claims that initially count two of the indictment for unauthorized entry of an uninhabited dwelling was defective in that it failed to state that the home belonged to another. He claims that after the trial started, the prosecutor improperly amended the indictment to add W.P. as the owner of the home. He claims there should have been a hearing prior to amending an essential element of the crime charged. He argues that had he known about the amended indictment before trial, he could have presented evidence that W.P. did not own the home.

Petitioner raised his improper amendment of the indictment claim on direct appeal. The Fourth Circuit found that the prosecutor amended the indictment by inserting W.P.'s name prior to trial and that petitioner was adequately advised of the charge against him. It further found that the insertion of W.P.'s name as the owner of the property did not change the elements of the offense and did not hamper petitioner's ability to effectively cross-examine him. The court found that the state's failure to list the municipal address and name of the owner of the property in the indictment did not violate petitioner's rights. Thus, he failed to that show that amendment of the indictment prejudiced him.[29]

The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the instrument is so defective that it deprived the state court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir.1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir.1984) (internal quotation marks omitted) (emphasis in original).

In denying petitioner's claim, the Fourth Circuit obviously found that the indictment was legally sufficient as a matter of state law. "Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." McKay, 12 F.3d at 68; cf. Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state

---

[29] Reel, 126 So. 3d at 514-16; St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 2010-KA-1737, pp. 9-12, 10/3/12.

court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Even if review is not precluded, this Court finds that the indictment was sufficient under Louisiana law, for the reasons set forth by the Fourth Circuit in the last reasoned state court decision on the issue. Because Reel was clearly on notice of the charges against him, and the state court found the bill of information sufficient under Louisiana law, this Court will not disturb the state court's ruling. The Fourth Circuit's decision was neither contrary to, nor an unreasonable application of, federal law. Reel is not entitled to federal habeas corpus relief on this claim.

### False Evidence

Petitioner claims that the prosecution presented false evidence at the trial. He specifically points to the audio of a December 6, 2009 phone call. During that call, petitioner tells a person to tell T.P. that he will give her $1,000 "for her troubles." Petitioner contends that the December 6, 2009 date was fabricated by the prosecution and that the call could not have occurred on that date because the jail recorded phone calls on the disc created by Hancock, the custodian of the inmate telephone system, ended on March 23, 2009.

Petitioner raised this false evidence claim on direct appeal. The Fourth Circuit Court of Appeal, citing to Napue v. Illinois, 360 U.S. 264 (1959), found the claim to be meritless. The court explained:

> There is nothing in the record to suggest that the content of the December 6, 2009 telephone call is false or that the call, as the defendant contends, did not occur. Don Hancock, the custodian of the inmate telephone system, testified that he made a recording of the call for trial. Moreover, at trial, Hancock listened to the recording, and he identified the call heard on the tape as the one he produced for trial. The State played the recording for the jury. The defense offered no evidence to refute that the call was made or that the recording introduced at trial was not that of the December 6, 2009 call. Even so, the content of the telephone call is

immaterial. Even if the call does indicate that the defendant had been attempting to silence the victim, the call is not evidence that the defendant is guilty of the crimes charged.

The defendant's contention the State presented false evidence with reference to the December 2009 telephone call by arguing that the call occurred one year, rather than nine months, after the cut-off period listed on the recording, is also immaterial. The difference of three months between the defendant's and State's time computations had no bearing on the verdicts rendered in this case—the overwhelming evidence of the defendant's guilt did. This assignment has no merit.[30]

"A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact." Bolton v. Cain, Civ. Action No. 13–4572, 2014 WL 432943, at *11 (E.D. La. Feb.4, 2014); Harvey v. Cain, Civ. Action No. 13–2994, 2013 WL 6490484, at *5 (E.D. La. Dec.10, 2013). Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the following reasons, it is clear that he has not made that showing.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Napue, 360 U.S. at 269; Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir.1996). However, as the state court correctly held, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003). Evidence is 'false' if, inter alia, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict." Id.

---

[30] Reel, 126 So. 3d at 517-18; St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 10-KA-1737, pp. 16-17, 10/3/12.

Here, as the Louisiana Fourth Circuit Court of Appeal noted, petitioner has presented no evidence whatsoever showing that the December 6, 2009 telephone call was false or that the recording introduced at trial was not the call, much less that the prosecution was aware of such false evidence. On the contrary, petitioner's allegations are wholly conclusory and unsupported; as such, they fail to state a viable claim of prosecutorial misconduct. See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation). Accordingly, he has not shown that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, relief is not warranted.

## **Speedy Trial**

Petitioner contends that he was denied his right to speedy trial. Petitioner claims that he was prejudiced by the eighteen month delay between the time he was charged and the time of his trial.

Petitioner raised this claim in his application for post-conviction relief. The trial judge found the claim to be without merit.[31] The Fourth Circuit found no error in the district court's judgment denying the application for post-conviction relief.[32] The Louisiana Supreme Court denied the related writ application.[33]

To the extent Petitioner claims he was not brought to trial within the time limits set forth in state law, he cannot be granted relief under 28 U.S.C. § 2254. Simply put: federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court

---

[31] St. Rec. Vol. 1 of 6, Minute Order, 6/30/14.
[32] St. Rec. Vol. 6 of 6, 4th Cir. Order, 2014-K-1001, 11/7/14; State v. Reel, 2014-K-1001 (La. App. 4th 2014).
[33] State ex rel. Reel, 178 So.3d 585; St. Rec. Vol. 6 of 6, La. Supreme Court Order, 2014-K-1001, 10/2/15.

does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).

Petitioner does, however, additionally assert a cognizable federal claim in this proceeding. Specifically, he claims that he was denied his federal constitutional right to a speedy trial.

In Barker v. Wingo, 407 U.S. 514, 530, (1972), the Supreme Court set out a four-factor balancing test, which considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant resulting from the delay. With respect to these balancing factors, the United States Supreme Court has explained:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Barker, 407 U.S. at 533 (footnote omitted).

A speedy trial claim presents a mixed question of law and fact.  Divers v. Cain, 698 F.3d 211, 216 (5th Cir. 2012); Amos v. Thornton, 646 F.3d 199, 204 (5th Cir. 2011).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Regarding the first factor, the United States Fifth Circuit Court of Appeals has held: "If the length of delay crosses a threshold level regarded as presumptively prejudicial, the district court must make findings regarding the remaining three factors and balance all four factors.  This Circuit generally requires a delay of one year to trigger speedy trial analysis."  United States v. Lucien, 61 F.3d 366, 371 (5th Cir.1995) (citation omitted).  In the instant case, petitioner's right to a speedy trial attached upon his arrest on September 23, 2008.  See, e.g., United States v. Greer, 655 F.2d

51, 52 (5th Cir. Unit A 1981) ("The constitutional assurance of a speedy trial attaches upon arrest, return of an indictment, or filing of an information, whichever first occurs."). Because his trial did not commence until eighteen months later, all four factors will be considered.

As to the first factor, the length of the delay, the delay was not of a magnitude normally considered unusually long. See Laws v. Stephens, 536 F. App'x 409, 414 n. 7 (5th Cir. 2013) (collecting cases). Further, as the United States Fifth Circuit Court of Appeals explained: "The bare minimum required to trigger a Barker analysis is one year. A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused." Amos, 646 F.3d at 206–07 (footnote omitted). The delay in the instant case fell significantly below that thirty-month threshold and does not weigh in petitioner's favor. United States v. Parker, 505 F.3d 323, 328–29 (5th Cir.2007) ("As for length of delay, the seventeen-month period ... does not weigh in [the accused's] favor.").

Regarding the second factor, the reason for the delay, the United States Supreme Court explained:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted).

Here, unquestionably, the delays were numerous.[34] However, there is no evidence whatsoever that any of the delays were motivated by a desire to hamper the defense. Furthermore,

---

[34] After the offense occurred on April 10, 2006, petitioner was arrested and convicted in Jefferson Parish on unrelated charges. He was released from prison on June 7, 2008, and went to Texas. On September 23, 2008, petitioner was extradited from Texas and taken into custody. The bill of information was filed January 23, 2009. Petitioner was

not all the delays were attributable to the state. Several delays were due to petitioner's dissatisfaction with his counsel, the eventual appointment of new counsel, and his new counsel's need for time to examine the evidence and prepare for trial. "[D]elays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." Goodrum v. Quarterman, 547 F.3d 249, 258 (5th Cir. 2008). At least one of the delays in trial was a result of not having enough jurors to conduct selection. It cannot be said that that delay was caused by or should weigh greatly against the state. Nonetheless, the state moved for most of the continuances. The record is devoid of any evidence regarding the reasons for most of those continuances. When all of these considerations are taken into account, the Court finds that this factor arguably weighs in favor of petitioner, but only moderately.

Regarding the third factor, petitioner's assertion of his right to speedy trial, the United States Supreme Court explained:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

---

arraigned on February 3, 2008. A hearing on petitioner's motion to suppress was held on April 2, 2009. The defense was not served with discovery until May 7, 2009. Trial was originally scheduled for June 22, 2009, however at a hearing on May 27, 2009, petitioner advised of his dissatisfaction with his attorney. At that time he filed a motion for speedy trial, which the trial court granted. The trial court removed petitioner's original counsel on June 4, 2009. A determination of counsel was set for June 16, 2009, but the trial court granted the state's motion for continuance due to a trial in progress. New counsel for petitioner appeared on June 22, 2009, and the defense motion for a continuance was granted. At that time, the defense motion for speedy trial was waived/denied. Trial was rescheduled for July 28, 2009. Due to outstanding discovery, a second discovery hearing was set for July 28, 2009, but was continued due to a trial in progress. Trial was next scheduled for October 19, 2009. On September 14, 2009, the state provided the defense with discovery and the defense filed a motion for speedy trial. The state's motion for a continuance of trial was granted. A discovery hearing was continued several more times at the state's request. The parties appeared on January 25, 2010 for trial, however, at that time, there were not enough jurors left to pull a jury panel. The trial was continued until February 9, 2010, but reset for March 15, 2010. Trial finally commenced on March 15, 2010.

Barker, 407 U.S. at 532–32.

The record reveals petitioner asserted his right to a speedy trial on several occasions. He filed his first pro se motion for speedy trial on April 16, 2009, approximately seven months after his arrest and three months after the bill of indictment was returned. He filed a second motion on May 27, 2009. That request for speedy trial was granted. However, shortly thereafter, petitioner was appointed new counsel and the trial was continued at the defense's request. A counseled motion for speedy trial was filed September 14, 2009. As petitioner timely and persistently asserted his right to speedy trial, this factor weighs in petitioner's favor. Amos, 646 F.3d at 208 (a diligent and non-dilatory request for speedy trial weighs in petitioner's favor).

Regarding the fourth factor, resulting prejudice, the United States Supreme Court explained:

> Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

Barker, 407 U.S. at 532 (footnote omitted).

Here, petitioner has made no showing whatsoever that his ability to present a defense was in any way impaired by the delay. For example, he has identified no witnesses who were unavailable or whose memories were dimmed as a result of the delay. He also has identified no evidence which was rendered unavailable. Vague and conclusory allegations are clearly insufficient to constitute proof of the prejudice required to support a speedy trial claim. See Goodrum, 547 F.3d at 262.

In summary, considering the balance of all four factors, including, significantly, that petitioner has not proven that he suffered any actual prejudice whatsoever from the delay, petitioner has failed to show that he was denied a speedy trial in violation of the United States Constitution. The state court's denial of this claim was not contrary to or an unreasonable application of constitutional law. Therefore, this claim should be rejected.

## Self-Representation

Petitioner alleges he was denied his right to self-representation and to dispense with counsel. On April 6, 2009, petitioner filed a motion to seeking to remove his appointed counsel and appoint new counsel.[35] At a status hearing on May 27, 2009, petitioner's counsel advised the trial court of petitioner's displeasure with his representation.[36] The trial court asked petitioner whether he desired to represent himself, to which petitioner responded, "It all depends."[37] When petitioner did not respond to the trial court's questions as to whether he wanted to represent himself, the trial court found that he was refusing to cooperate with the court and took his silence as his intent to continue to be represented by counsel.[38] Petitioner then advised that he did not want his counsel to represent him.[39] Despite the fact that petitioner had not requested to represent himself, the trial court conducted a <u>Faretta</u> colloquy to determine whether petitioner was waiving his right to counsel. During the colloquy, petitioner explained that, "It's not that I don't want any lawyer to help me. I don't want this lawyer to help me, Mr. Donnelly."[40] Initially, the trial court granted petitioner the right to proceed without counsel, however, the trial court later advised him that it was not a good idea to represent himself.[41] The trial court expressed concerns that the

---

[35] St. Rec. Vol. 1 of 6, <u>Pro Se</u> Motion to Substitute Counsel, New Counsel and/or Dismissal of Counsel, 4/6/09.
[36] St. Rec. Vol. 4 of 6, Transcript, p. 10, 5/27/09.
[37] <u>Id.</u>, at p. 3.
[38] <u>Id.</u>, at pp. 3-4.
[39] <u>Id.</u>, at p. 4.
[40] <u>Id.</u>, at p. 10.
[41] <u>Id.</u>, at pp. 12-14.

motions petitioner filed were not authenticated and were written by a jailhouse lawyer, and that petitioner really did not understand the law. Petitioner then requested the court appoint counsel to act as co-counsel at trial.[42] At the end of the hearing, the trial court urged the petitioner to cooperate with his counsel.[43] A determination of counsel hearing was held on June 4, 2009. Petitioner's counsel was removed as counsel of record and the trial court appointed counsel of the conflict panel to represent petitioner.[44] On June 22, 2009, new counsel was enrolled.[45]

Petitioner attacks the constitutionality of the trial court's action in depriving him the right of self-representation and appointing new counsel. Petitioner raised this issue in his application for post-conviction relief. The trial court found the claim to be meritless.[46] The Fourth Circuit Court of Appeal found no error in the ruling.[47] The Louisiana Supreme Court denied the related writ application without stated reasons.[48]

The right to self-representation and waiver of counsel are mixed questions of law and fact. Brewer v. Williams, 430 U.S. 387, 397 & n.4, 403-404 (1977); Miller v. Fenton, 474 U.S. 104 (1985). The Court must therefore determine whether the denial of relief by the state courts was contrary to, or an unreasonable application of Supreme Court law.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.' " Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Iowa v. Tovar, 541 U.S. 77, 80-81 (2004), and citing United States v. Cronic, 466 U.S. 648, 653-654 (1984) and Gideon v. Wainwright, 372 U.S. 335, 344 (1963)). A criminal defendant, however, also has the right to self-representation to

---

[42] Id., at p. 17.
[43] Id., at pp. 18-20.
[44] St. Rec. Vol. 1 of 6, Minutes, 6/4/09.
[45] St. Rec. Vol. 1 of 6, Minutes, 6/22/09.
[46] St. Rec. Vol. 1 of 6, Minute Order, 6/30/14.
[47] St. Rec. Vol. 6 of 6, 4th Cir. Order, 2014-K-1001; 11/7/14.
[48] St. Rec. Vol. 5 of 6, La. Supreme Court Order, 2012-KO-2433, 4/12/13.

"proceed without counsel when he intelligently elects to do so." Faretta v. California, 422 U.S. 806, 807 (1975); Miller v. Thaler, 714 F.3d 897, 903 (5th Cir. 2013).

Waiver of the right to counsel must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation. Id.; United States v. Long, 597 F.3d 720, 723 (5th Cir. 2010). Once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a Faretta hearing to ensure that the defendant's request to proceed without counsel is knowing and voluntary. See Faretta, 422 U.S. at 835-36; United States v. Cano, 519 F.3d 512, 516 (5th Cir. 2008). A Faretta warning, therefore, is required when the defendant unequivocally invokes his right to proceed on his own behalf and waives his right to counsel. See Cano, 519 F.3d at 516; see also, Long, 597 F.3d at 724.

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." Tovar, 541 U.S. at 88. The state trial court need only be convinced that the defendant "knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." McKaskle v. Wiggins, 465 U.S. 168, 173 (1984). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.' " Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

Under the principles announced in Faretta, a competent criminal defendant has a Sixth Amendment right to represent himself at trial if he waives his right to counsel. A trial court cannot deny the defendant's motion to proceed without counsel simply on the belief that the defendant lacks sufficient knowledge or understanding of the law. Following this doctrine, the Supreme Court made clear that "even assuming that self-representation might pose special trial-related

difficulties, 'the competence that is required of a defendant to waive his right to counsel is the competence to waive the right, not the competence to represent himself.' " (emphasis in original) Indiana v. Edwards, 554 U.S. 164, 172 (2008) (quoting Godinez v. Moran, 509 U.S. 389, 399 (1993)).

The courts have recognized that a defendant has no constitutional right to "engage in hybrid representation whereby he and his attorney ... act as co-counsel." Cano, 519 F.3d at 516, citing McKaskle, 465 U.S. at 182. When a defendant makes a request to act as co-counsel or some version of hybrid representation, the protections discussed in Faretta do not apply. Randolph v. Cain, 412 F. App'x 654, 658 (5th Cir. 2010). "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." McKaskle, 465 U.S. at 168.

The record reflects that petitioner personally did not make a clear and unequivocal request to represent himself. Both in his written motion and at the May 27, 2009 hearing, he expressed dissatisfaction with his initial counsel and sought his removal and appointment of new counsel to represent him. He very clearly told the trial court that, "It's not that I don't want any lawyer to help me. I don't want this lawyer to help me, Mr. Donnelly."[49] When the trial court initially advised it would allow petitioner to represent himself (although petitioner never requested that he be permitted to do so), petitioner requested the court assign him co-counsel to assist at trial. These equivocated requests did not invoke the protections under Faretta and did not stand as a clear expression of the right to self-representation. See United States v. Gutura, 430 F. App'x 314, 317 (5th Cir. 2011) (petitioner did not clearly and unequivocally invoke his right to self-representation

---

[49] St. Rec. Vol. 4 of 6, Transcript, p. 10, 5/27/09.

where he primarily sought to substitute his counsel and allowed his counsel to continue to file pleadings on his behalf); Randolph, 412 F. App'x at 658 (requests to replace counsel with new counsel and to act as co-counsel not clear and unequivocal); Gill v. Mecusker, 633 F.3d 1272, 1295–96 (11th Cir.2011) (holding that the state court's finding that the petitioner's Faretta request was equivocal was objectively reasonable, because he "consistently coupled his request to represent himself with an expression of a preference for representation by a different lawyer").

Even assuming arguendo that petitioner made a clear and unequivocal assertion of his right to self-representation, he abandoned his right to self-representation through his acquiescence to the appointment of counsel on June 22, 2009 and his failure to thereafter to assert a desire to represent himself.  See Rayford v. Johnson, 253 F.3d 706, 2001 WL 498712, (5th Cir. 2001) (per curiam) (Table, Text in Westlaw) (where trial court failed to expressly rule on petitioner's motion to represent himself, petitioner waived the right to represent himself where he did not object or reassert his right to self-representation and allowed counsel to proceed with trial representation); Brathwaite v. Phelps, 418 F. App'x 142,146-48 (3rd Cir. 2011) (where trial court never ruled on motion to proceed pro se, petitioner waived his right to self-representation after new counsel was appointed).

The state court's denial of this claim was not contrary to or an unreasonable application of constitutional law.  Therefore, this claim should be rejected

### False Testimony

Petitioner claims the prosecution elicited false testimony and allowed false testimony to go uncorrected to obtain the convictions.  He argues that the victim's trial testimony contradicted her statements to law enforcement.  He specifically points to the victim's trial testimony that petitioner slept on a bench in the alley outside her home and that he broke in through the door and picked

the lock to gain entry to the home. Petitioner argues that this testimony contradicts the victim's statements to police that petitioner was standing in the alley and her backyard the night before the rape and that her brother must have forgotten to lock the door when he left the house in the morning.

Petitioner raised this claim on direct appeal. The Fourth Circuit Court of Appeal reviewed the contradictions between the victim's statement to police and her trial testimony and rejected the claim. The court explained as follows:

> None of the foregoing instances proves that the prosecutor knew that the victim's testimony was false. It cannot be presumed that a prosecutor has knowledge that a witness' answer is false simply because the witness may have testified somewhat differently on a prior occasion. A witness' memory may fade with the passage of time. The offenses charged in this case happened on April 10, 2006. The case was tried in March 2010—almost four years after the victim's horrifying experiences. The terror, stress and pain the victim suffered as a result of the rape offer an explanation for the differences between the information she gave the police immediately after the rape and that of her trial testimony—given approximately four years later under much different circumstances. Moreover, the defendant had a copy of the police report at trial and could have cross-examined the victim on any of the foregoing to emphasize the discrepancies to the jury.
> There is no evidence in the record that contradicts the facts that the defendant entered W.P.'s residence without authority and raped the victim at gunpoint with threats of bodily harm. The foregoing instances of conflicting testimony highlighted by the defendant do not prove the testimony was false. The defendant's right to a fundamentally fair trial was not abridged.[50]

As detailed above, due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio, 405 U.S. at 153; Napue, 360 U.S. at 269; Faulder, 81 F.3d at 519. Because the Fourth Circuit identified the correct legal standard, Napue, this court must determine if its decision was objectively unreasonable pursuant to U.S.C. § 2254(d)(1).

---

[50] Reel, 126 So. 3d at 518-19; St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 2010-KA-1737, p. 18, 10/3/12.

Here, petitioner argues that the prosecution must have known that it was presenting perjured testimony because of inconsistencies between the victim's trial testimony and her prior statement to law enforcement. However, perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Further, perjury is not established by mere contradictory testimony from witnesses or inconsistencies in a witness' testimony. Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001); Koch, 907 F.2d at 531. Rather, contradictory testimony from witnesses or inconsistencies in a witness' testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured. Id.

Petitioner has not established that the victim's testimony was actually false or that the prosecution knew it was false. The inconsistencies in her testimony presented nothing more than a routine credibility issue for the jury to afford the appropriate weight to the testimony. Likewise, petitioner has failed to prove that the prosecution directed or procured the victim's alleged perjured testimony. For these reasons, petitioner has not shown that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, relief is not warranted.

### Failure to Arraign

Petitioner contends "the evidence on the record is insufficient to support the adjudication of Petitioner as a third offender violating Petitioner's U.S. Constitutional rights."[51] In the facts supporting his claim, however, petitioner argues that he was not arraigned.[52]

---

[51] Rec. Doc. 4, p. 12.
[52] Id., at p. 13.

Petitioner raised his failure to arraign claim in his direct appeal. The Fourth Circuit Court of Appeal found as follows:

> Addressing first the issue of lack of arraignment, the record shows the defendant was put on notice of the multiple bill at the end of trial on March 16, 2010, when the State filed the multiple bill, and again at the defendant's June 10, 2010 sentencing. Further, prior to the hearing on the multiple bill on August 6, 2010, the defendant filed a Motion to Quash and/or Object to Habitual Bill of Information in which he did not raise the issue of arraignment. After the trial court denied the motion to quash the multiple bill, defense counsel indicated the defendant's readiness to proceed with the multiple bill hearing when counsel did not object to the State's calling its witness. Therefore, any procedural irregularity or error in the failure to arraign the defendant was waived. See State v. Sykes, 2004–1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156; La.C.Cr.P. art. 555.2.

> The trial court held a hearing at which the State's evidence proved the defendant's multiple offender status. NOPD Officer Joseph Pollard testified that he took the defendant's fingerprints prior to commencement of the multiple bill hearing. Pollard identified State's Exhibit 1 as the card containing those fingerprints. Further, Pollard identified State's Exhibit 2 as the certified packet on Case No. 377–073, which evidenced a 1995 Orleans Parish conviction for illegal discharge of a firearm. The packet contains a bill of information containing fingerprints, docket master, plea of guilty form, minute entry, screening action form and an arrest register. Pollard testified that he compared the fingerprints on the bill of information of State's Exhibit 2 to the fingerprints on State's Exhibit 1, and concluded that the fingerprints on State's Exhibit 2 belonged to the defendant.

> Next, Pollard identified State's Exhibit 3 as the certified packet on Case No. 388–861, which proved to be a 1997 Orleans Parish conviction for unauthorized entry of an inhabited dwelling. The packet contained a guilty plea form and a bill of information containing fingerprints. Pollard compared the fingerprints in State's Exhibit 3 to those on State's Exhibit 1, and found that the prints on the bill of information matched those on State's Exhibit 1 and belonged to the defendant. Based on the foregoing exhibits and testimony, the State proved that the defendant was a third felony offender.[53]

The state argues petitioner's claim that he was not arraigned is procedurally barred. For the following reasons, the state is correct.

The United States Fifth Circuit Court of Appeals has held:

---

[53] Reel, 126 So. 3d at 516; St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 201-KA-1737, pp. 13-14, 10/3/12.

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir.2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Because article 555 is clearly a state procedural rule independent of the merits of the federal claim, this Court need only address whether it is "adequate."[54] "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir.1999). In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule around the time it was applied. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).

Here, petitioner clearly has not met his burden in that he makes no attempt to establish that article 555 was not strictly or regularly followed. Moreover, this Court's research indicates that Louisiana state courts strictly and regularly invoke article 555. See, e.g., State v. Lopez, 971 So.

---

[54] La. Code Crim. P. article 555 provides that "[a]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty."

2d 416, 418 (La. App. 4th Cir. 2007), State v. Charles, 790 So. 2d 705, 712 (La. App. 5th Cir. 2001); State v. Martin, 788 So. 2d 1, 7 (La. App. 4th Cir. 2000); State v. Crowell, 773 So. 2d 871, 876 (La. App. 4th Cir. 2000); State v. Williams, 769 So. 2d 629, 638 (La. App. 4th Cir. 2000); State v. Flanagan, 744 So.2d 718, 731 (La. App. 2d Cir. 1999); State v. Paris Properties, Inc., 503 So.2d 594, 596 (La. App. 4th Cir. 1997).

Where, as here, the procedural rules invoked by the state courts are "independent" and "adequate," "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). However, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Here, petitioner makes no attempt to establish "cause" for the procedural default of this claim. Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998). However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual

innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced. Id. at 265-66. The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received." Id. at 264. However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit. Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors. Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not shown that he was legally ineligible for the sentence imposed. Accordingly, for the foregoing reasons, the undersigned finds that petitioner's claim that he was not arraigned on the multiple offender bill is procedurally barred.[55]

## Right To Confront Witnesses

Petitioner contends his right to confront witnesses was violated when the victim's medical records were introduced into evidence. He claims that the records were not properly authenticated and certified as required by Louisiana rules of evidence. He further claims that the person who prepared the medical records and the physician who performed the victim's pelvic exam did not testify. He argues that Nurse Mahoney impermissibly testified regarding the physician's findings.

---

[55] In any event, the Court notes that it is well established that a formal arraignment is not constitutionally required under federal law if it is shown that the defendant knew what he was accused of and was able to defend himself adequately. Dell v. Louisiana, 468 F.2d 324, 325 (5th Cir.1972). Petitioner was present when the state filed the multiple bill at the sentencing hearing. St. Rec. Vol. 4 of 6, Transcript, p. 9, 6/10/10. His counsel filed a motion to quash the multiple bill. St. Rec. Vol. 1 of 6, Motion to Quash, 8/6/10; Vol. 4 of 6, Transcript, pp. 2-3, 8/6/10. Petitioner's counsel's cross-examination of the latent fingerprint expert demonstrates that he was prepared to defend petitioner. Id. pp. 11-14. To the extent that petitioner is suggesting that he was not aware of the charges against him or that he was unable to defend himself adequately, he is being, at best, disingenuous.

Petitioner objected to the admission of the medical records at trial as hearsay. The trial court found that the records were admissible as Mahoney, who had been qualified as an expert in the field of sexual assault nurse examination, had reviewed the records in connection with the formulation of his opinion.[56]

Petitioner raised his confrontation clause claim in his application for post-conviction relief. The trial court denied the application finding the claims to be without merit.[57] The Louisiana Fourth Circuit found no error in the trial court's denial providing no further reasons for its ruling.[58] The Louisiana Supreme Court also offered no basis for its one word denial.[59]

To the extent that petitioner claims the records were admitted in violation of state law, that claim is not cognizable on federal habeas review. See Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).

Confrontation claims are 'mixed' questions of law and fact and thus fall under the purview of § 2254(d)(1). Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997)) (noting violation of Sixth Amendment confrontation right is mixed question of fact and law); Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (admissibility of evidence); Lilly v. Virginia, 527 U.S. 116, 136, 148 (1999) ("Deciding whether a particular statement bears the proper indicia of reliability under

[56] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, pp. 33-34, 3/16/10.
[57] St. Rec. Vol. 1 of 6, Minute Order, 6/30/14.
[58] St. Rec. Vol. 6 of 6, 4th Cir. Order, 2014-K-1001, 11/7/14.
[59] State ex rel Reel, 178 So. 3d at 585; St. Rec. Vol. 6 of 6, La. Supreme Court Order, 2014-K-1001, 10/2/15.

our Confrontation Clause precedent 'may be a mixed question of fact and law,' but the mix weighs heavily on the 'fact' side."); accord Fratta v. Quarterman, 536 F.3d 485, 499 (5th Cir. 2008).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. This "bedrock procedural guarantee" is applicable in both federal and state prosecutions. Crawford v. Washington, 541 U.S. 36, 42 (2004). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. Crawford, 541 U.S. at 59.

In Melendez–Diaz v. Massachusetts, the Supreme Court expanded the definition of testimonial statements to include statements that are "functionally identical to live, in-court testimony." 557 U.S. 305, 310–11 (2009). The Court held that the prosecution violated the defendant's right to confrontation by admitting certificates of analysis identifying a substance found in the defendant's possession as cocaine. See Id. at 329.

More recently, the Supreme Court reiterated that "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." Williams v. Illinois, ___ U.S. ____, 132 S.Ct. 2221, 2228 (2012). According to Williams, out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion rests "are not offered for their truth and thus fall outside the scope of the Confrontation Clause." Id. Moreover, out-of-court statements are testimonial

only if they have "the primary purpose of accusing a targeted individual of engaging in criminal conduct" and, usually, they involve "formalized statements, such as affidavits, depositions, prior testimony, or confessions." Id. at 2242.

There is no evidence that either of the two witnesses identified by petitioner were necessary to testify regarding the medical records. The failure to present the testimony of the records custodian who certified that the documents were a true copy of the original records did not violate petitioner's right to confrontation. An affidavit or the like certifying that records provided were accurate copies of the original records is not testimonial and not subject to the Confrontation Clause. Payne v. Cain, Civ. Action No. 3:15-cv-2747, 2016 WL 4032717, at *7 (W.D. La. May 27, 2016); McLaughlin v. Macdonald, Civ. Action No. 11–11587–JLT, 2013 WL 4679604, at *7-8 (D. Mass. Aug. 29, 2013) (custodial certification that documents were true copies of original medical records is non-testimonial and not subject to the Confrontation Clause), adopted, 2016 WL 4033248 (July 27, 2016), appeal docketed, No. 16-30936 (5th Cir. Aug. 22, 2016). Further, there is simply no evidence that anyone other than Mahoney conducted the examination of the victim, collected the specimens, and completed the medical records. In fact, when identifying the records, Mahoney testified that "[t]hey are the medical records of the forensic examination I did for Tracey Patterson."[60] (Emphasis added). At no time did Mahoney indicate that another person assisted in the forensic examination of the victim. Accordingly, there was no Confrontation Clause violation in the admission of the victim's medical records. See, e.g., May v. Stephens, No. 13-0337, 2014 WL 5493246, at *4 (N.D. Tex. Oct. 29, 2014) (allowing an expert to testify regarding petitioner's blood alcohol level did not violate Confrontation Clause where there was no evidence that admitting physician drew the blood sample or conducted tests on the sample).

---

[60] Id. at p. 34.

Furthermore, the Supreme Court has not yet addressed whether a statement made to a medical professional for dual purposes of obtaining medical care and providing evidence for a later criminal prosecution is testimonial. Dorsey v. Cook, --- F. App'x ----, No. 16-3522, 2017 WL 371959, at *2 (6th Cir. Jan. 26, 2017) ("Nothing in Crawford or subsequent Supreme Court cases interpreting the meaning of "testimonial," including the cases cited by Dorsey, compels the conclusion that statements made to a sexual assault nurse examiner for both medical and legal purposes are testimonial."). Given the absence of clearly established federal precedent on the Confrontation Clause's application to statements made for both medical and legal purposes, the state court did not contravene, or unreasonably apply, clearly established Supreme Court jurisprudence in denying petitioner's claim. See Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (holding that "it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the United States Supreme Court]"); Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) ("Given the lack of holdings from [the United States Supreme Court] regarding" the claim, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' ")

Even assuming admission of the medical records constituted inadmissible hearsay in violation of petitioner's Confrontation Clause rights, the violation would be subject to harmless error review. See Bullcoming v. New Mexico, 564 U.S. 647, 669 n. 11 (2011) (finding Confrontation Clause error and noting that "nothing in this opinion impedes a harmless-error inquiry on remand"); Fratta, 536 F.3d at 507–508 (citing Coy v. Iowa, 487 U.S. 1012, 1021, 108 S. Ct. 2798, 101 L.Ed.2d 857 (1988)). In this case, any violation of petitioner's Confrontation Clause rights was harmless in light of the other properly admitted evidence at trial.

In Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the United States Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " Id. (citing United States v. Lane, 474 U.S. 438, 449 (1986)).

Petitioner has failed to show that the admission of the medical records had a substantial and injurious effect or influence on the jury's verdict. The medical records were cumulative of other evidence presented at trial. Nurse Mahoney testified regarding his forensic examination of the victim.[61] Defense counsel had the opportunity to cross-examine Mahoney, although he chose not to do so. The parties stipulated to the fact that Reel was the donor of the seminal fluid recovered from the sexual assault exam.[62] The victim testified extensively regarding the incident and the aftermath including testifying that she described what had happened to the nurses at the hospital.[63] Thus, even if a violation of the Confrontation Clause had occurred in this case, the error was harmless.

Accordingly, for the reasons expressed, the state court's denial of relief was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Petitioner is not entitled to relief on this claim.

---

[61] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, pp. 36-39, 3/16/10
[62] Id., at pp. 40-41.
[63] Id. at pp. 42-75.

## Ineffective Assistance of Counsel

Petitioner raises various claims of ineffective assistance of counsel in his petition. Specifically, petitioner contends his counsel rendered constitutionally ineffective performance in failing to: (1) challenge the admission of "others crimes" and hearsay evidence and in soliciting such evidence; (2) investigate the case and call material witnesses; (3) investigate medical and forensic evidence and retain experts; and (4) move for mistrial based on prosecutorial misconduct. Petitioner raised these claims in his post-conviction application, and the trial court found the claims to be meritless.[64] The Fourth Circuit found no error in the trial court's denial of the application.[65] The Louisiana Supreme Court denied petitioner's related writ application without assigning additional reasons.[66]

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be

---

[64] St. Rec. Vol. 1 of 6, Minute Order, 6/30/14.
[65] St. Rec. Vol. 6 of 6, 4th Cir. Order, 2014-K-1001, 11/7/14.
[66] State ex rel Reel, 178 So. 3d at 585; St. Rec. Vol. 6 of 6, La. Supreme Court Order, 2014-K-1001, 10/2/15.

granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

    A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

    Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

    Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added;

quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

The clearly established federal law which governs ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

Petitioner first claims his counsel should have challenged the admission as hearsay evidence of the victim's sister's statements elicited from the victim in her direct examination and of "other crimes" evidence included in the 911 call. He further claims that his attorney was ineffective when he actively solicited even more details about "other crimes," as well as the hearsay statements of police officers on cross-examination of the victim.

It has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios–Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07–4200, 2008 WL 1746710, at *7 (E.D. La. Apr.14, 2008). Moreover, the United States Supreme Court has clearly held:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (citation and quotation marks omitted; emphasis added). In the instant case, petitioner essentially argues that the failure to object to the evidence in question was so wrongheaded that the state court's decision finding that petitioner had failed to demonstrate

ineffective assistance of counsel was necessarily unreasonable. For the following reasons, the undersigned simply cannot agree.

At trial, the victim testified that after she got off the bus, she went to her sister's house and told her what had happened. According to victim, her sister was scared and responded, "Why you ran here, he might be behind you?"[67] Contrary to petitioner's contention, the testimony was properly admissible pursuant to the *res gestae* doctrine. The Louisiana Supreme Court has explained the admissibility of such evidence in the state courts, noting:

> This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." State v. Brewington, 601 So.2d 656, 657 (La. 1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." State v. Molinario, 383 So.2d 345, 350 (La.1980). We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Haarala, 398 So.2d 1093, 1098 (La. 1981) (emphasis added); see also 1 McCormick on Evidence, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted). The *res geaste* [sic] or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." Id.

---

[67] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, p. 58, 3/16/10

State v. Colomb, 747 So. 2d 1074, 1075-76 (La.1999) (emphasis added). Evidence, such as that at issue here, which is necessary to explain the sequence of events to the jury is relevant and admissible under the *res gestae* doctrine. See, e.g., State v. Senegal, 19 So. 3d 623, 627 (La. App. 3rd Cir. 2009); State v. Clements, 519 So. 2d 236, 238 (La. App. 5th Cir. 1988); State v. Johnson, 440 So. 2d 838, 842 (La.App. 2d Cir.1983). Because petitioner has not established that the testimony was improper, he cannot show that counsel was ineffective for failing to object to its admission. Trial counsel's performance can never be deficient for failing to make a specious objection. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner contends that his counsel should have objected to the admission of the 911 call and further rendered constitutionally deficient performance in eliciting "other crimes" testimony from the victim. In her 911 call, the victim stated that she had called the police numerous times in the past and had petitioner sent to jail previously. The prosecution played the call during the victim's testimony. On cross-examination, defense counsel questioned the victim about the 911 call. The following exchange occurred:

> Q. On the 911 tape you mentioned that you called the police on numerous times and had him locked up. Why didn't you tell the police that he wouldn't leave, that you wanted him out of your house for good?
> A. I did. I tell them many of times. He was in jail and everything, but he'd come right back out, and come right back to me. And I couldn't leave him.
> Q. And the police wouldn't do anything about that?
> A. They put him in jail. They put him in jail for five months. They said they can't keep him no more than six months in there.
> Q. What was his charge?
> A. Domestic violence?

Q. On you?

A. On me, yes.

Q. And did you ever go to court?

A. Every time.

Q. What happened in court?

A. They set it back. I went to court so many times and they kept setting it back, setting it back, and one day I have high blood pressure and my pressure was high and I couldn't even get out of the bed, and they had been setting it back for a long time. Every time I went, they set it back, and that day there, I asked the DA man, please set it back one more time. I said, "My pressure high right now, I'm not feeling good. I can't make it to court. Would they please set it back?" And that night he called me on the phone and he said they had let him go.

Q. And once he called you on the phone, what occurred then?

A. He came back. The next day, he was back in my life. Say I can't leave him.[68]

The victim's statements in the 911 call that she had called 911 previously and that petitioner had been sent to jail in the past were spontaneous utterances and proper *res gestae* evidence under state law. State v. Falkins, 146 So.3d 838, 851-52 (La. App. 4th Cir. 2014) (portion of 911 call referencing that the defendant had beaten victim previously was admissible as *res gestae*). As the admission of the 911 call was proper, petitioner's counsel's failure to object did not constitute deficient performance and no prejudice resulted.

As for the defense counsel eliciting testimony from the victim that petitioner allegedly had been previously charged with domestic violence, it is clear that counsel, by questioning the victim about the 911 call and the fact she did not mention that she had been raped, was attempting to diminish the victim's credibility. Regardless of whether counsel was unwise to elicit information regarding petitioner's prior abuse of the victim on cross examination, petitioner has not established that counsel was ineffective in this regard. As already noted, the United States Supreme Court has clearly held there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that a petitioner bears the burden of overcoming "the

---

[68] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, pp. 64-65, 3/16/10.

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.

It appears from the whole of his cross-examination of petitioner that defense counsel was trying to show that the victim was untruthful. The entire thrust of his closing argument was that the victim let petitioner into the home and that the sexual intercourse was consensual.[69] There is nothing to indicate that there is a reasonable probability that the result of the trial would have been different but for the testimony defense counsel elicited from petitioner. Petitioner has not shown prejudice as a result of the error. Accordingly, under the AEDPA's strict and doubly deferential standard of review, this claim likewise fails.

Finally, the victim's testimony relating to police officers' previous statements to her that petitioner would only face six months in jail was not offered for the truth of the matter asserted. Therefore, any objection on hearsay grounds would have been meritless. Second, even if testimony had been improper, federal law holds that a decision of counsel to forgo a particular objection is generally one of trial strategy, and, as such, is normally insufficient to support an ineffective assistance claim. See, e.g ., Wolfe v. Cain, Civ. Action No. 11–2906, 2012 WL 6839718, at *9 (E.D. La. May 14, 2012), adopted, 2013 WL 139871 (E.D. La. Jan. 10, 2013); Rios–Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy."). Such deference is appropriate here where there simply is no reasonable probability that the result of the proceeding would have been different if defense

---

[69] St. Rec. Vol. 4 of 6, Closing Arguments Transcript, pp. 3/16/10.

counsel had objected to the comment, and therefore petitioner cannot show the prejudice required to prevail on his ineffective assistance of counsel claim.

Petitioner next claims that his counsel failed to adequately investigate the case and interview and call witnesses William Rowel, Jr., James Black and William Moore. He also argues that his counsel should have investigated his employment history as it would have been helpful to his defense.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Petitioner offers no evidence that his counsel actually failed to investigate his employment history or interview William Rowel, Jr., James Black, and William Moore. Nonetheless, even if petitioner were able to establish that fact, that alone would not suffice. Petitioner must further establish that the investigation would have resulted in a reasonable probability that the outcome of the trial would have been different. The state correctly points out that petitioner offers no explanation as to how his employment history would have changed the outcome of the trial. Nor has he established that Black or Moore would in fact have supported his version of events if they had been interviewed. That defect is fatal, because a petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the

prejudice required to prevail on such a claim.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was ineffective for failing to call the purported witnesses to testify at the trial.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Petitioner presented no evidence, such as affidavits from either Black or Moore, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, again, he obviously failed to meet his burden of proof with respect to this claim as it relates to those uncalled witnesses.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009

WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner submitted an undated affidavit from Rowel in which Rowel states that he and petitioner were at a strip club until 5:00 a.m. on the morning of April 10, 2006, and that after he dropped petitioner off at his residence in Gretna and saw the victim let petitioner in the front door.[70] First, Rowel's affidavit, submitted years after the crimes and trial, is inherently suspect. See Schlup, 513 U.S. at 298 (timing of submission and likely credibility of the affiants a consideration in probable reliability of new evidence submitted to establish claim of actual innocence); see also Herrera, 506 U.S. at 423 (last minute affidavits treated with "fair degree of skepticism," as "when a prisoner's life is at stake, he can often find someone new to vouch for him.). Second, Rowel's claim that he dropped petitioner off at his house is inconsistent with petitioner's March 13, 2009 statement to the investigator that Rowel dropped him off at the victim's house.[71] Further, petitioner has not established that Rowel was actually available to testify at trial. The requirement that a petitioner present evidence that a proposed witness was available to testify at trial and would

---

[70] Rec. Doc. No. 4, p. 182.
[71] St. Rec. Vol. 3 of 6, Investigator Memorandum, p. 2, 3/13/09.

have done so is a prerequisite to the granting of relief, not "a matter of formalism." <u>Woodfox</u>, 609 F.3d at 808. Therefore, this claim necessarily fails.

Petitioner next claims his counsel was ineffective in failing to investigate the medical and forensic evidence and failing to consult with or call experts to review or challenge the issue of penetration and the DNA analysis of the oral and vaginal swabs. He argues an investigation into the evidence would have uncovered exculpatory or favorable evidence that could have resulted in his acquittal. He also argues that his counsel should have cross-examined Mahoney and the state's forensic expert.

Petitioner offers no evidence that his counsel actually failed to investigate the medical and forensic evidence. He offers no evidence whatsoever as to what investigative steps counsel took or failed to take. Nor has petitioner brought forth any evidence establishing that there is a reasonable probability that the outcome of the trial would have been different. He simply has not shown that additional investigation relating the medical and forensic evidence would have led to exculpatory evidence. His bare speculation is sufficient to meet his burden of proof with regard to this claim. <u>Thomas</u>, 2009 WL 4799203, at *9.

Petitioner argues his counsel should have hired experts to testify that the victim's pelvic exam was consistent with consensual sexual intercourse and to challenge the forensic evidence. The law, however, is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand. <u>Yohey v. Collins</u>, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." <u>Id.</u>; <u>Griffith v. Quarterman</u>, 196 F. App'x 237, 243 (5th Cir. 2006); <u>see also</u>, <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (citing <u>Strickland</u>, 466 U.S. at 687). The requirement that the

petitioner establish prejudice based on his counsel's failure to call a witness by the naming the witness, setting forth the proposed testimony, demonstrating that the witness was available and would have testified and showing the testimony would have been favorable to his defense applies to both lay and expert witnesses. Woodfox, 609 F.2d at 808 (citing Day, F.2d 566 at 538).

Mahoney, the state's expert, testified that no inferences could be drawn from the fact that the pelvic exam showed no signs of injuries. He explained, "[t]he presence or absence of injuries does not determine consent or rape or sexual assault. It's possible to have been assaulted and have no injuries. It's possible to have consensual sex and have injuries. So the presence or absence doesn't tell you anything about consent."[72] He further explained that he had read a study that found persons who have had prior sexual experiences with each other have a lower rate of injuries from sexual intercourse.[73] Petitioner has presented no evidence demonstrating that a retained or appointed expert would have testified that the absence of injury was consistent with consensual sexual intercourse. See Scott v. Louisiana, 934 F.2d 631, 633 (5th Cir. 1991). As a result, this Court cannot find counsel ineffective for failing to present the testimony of an expert who has not even been shown to exist. Anthony, 2009 WL 3564827, at *8 ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.")

Petitioner's claim that his counsel was ineffective in failing to obtain and present an expert witness with regard to the DNA evidence similarly fails. Petitioner fails to identify any particular expert witness, his availability to testify, and the content or substance of the expert witness' testimony. Moreover, he fails to demonstrate that the testimony would have been favorable to a "particular" defense.

---

[72] St. Rec. Suppl. Vol. 1 of 1, Trial Transcript, p. 37, 3/16/10
[73] Id.

Petitioner complains that defense counsel failed to cross-examine Nurse Mahoney. The Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

Petitioner has not met his burden with respect to his claim. This Court cannot say that counsel's failure to cross-examine Mahoney was so deficient as to violate petitioner's constitutional rights. Cross-examining Mahoney would have accomplished little given petitioner's defense of consensual sexual intercourse. Likewise, given Mahoney's testimony on direct, defense counsel may reasonably have considered it unlikely that cross-examination of Mahoney would have elicited favorable evidence. Even assuming, arguendo, that petitioner's counsel was deficient for failing to cross-examine Mahoney, he has not offered any evidence to demonstrate that this

failure altered the outcome of his trial, and his unsupported speculation is insufficient to satisfy the prejudice prong of Strickland.

As for his claim that his counsel should have examined the state's forensic expert to challenge the DNA evidence, the expert did not testify because counsel stipulated that the seminal fluid was that of petitioner. Presumably defense counsel made a strategic choice to enter into the stipulation as the lab results reflected the presence of seminal fluid or sperms cells consistent with petitioner's DNA. Where a stipulation is a concession of facts which the state could have easily established at trial and no advantage would have inured to a petitioner had counsel refused to enter the stipulation, counsel is not ineffective when he enters into such a stipulation. See Berry v. King, 765 F.2d 451, 454–55 (5th Cir. 1985); McGee v. Cain, Civ. Action No. 06–11360, 2007 WL 4591227, at *12 (E.D. La. Dec. 26, 2007); Parker v. 24th Judicial District Court, Civ. Action No. 06–10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007). Here, the prosecution could have easily established the results of the rape kit testing through the testimony of its expert. There was no advantage for petitioner to refuse to enter into a stipulation. Further, petitioner's defense at trial was that the sexual act was consensual. Petitioner's counsel's stipulation that the petitioner was the donor of the seminal fluid was consistent with and did not negatively impact his defense. He has not demonstrated that it was unsound trial strategy on the part of trial counsel to enter into this stipulation or that doing so had any impact whatsoever on the outcome of the proceedings Brown v. Warden of Wallens Ridge State Prison, No. Civ.A. 7:00–CV–00792, 2001 WL 34823920, at *1 (W.D. Va. Jul. 3, 2001) (counsel did not render constitutionally inadequate assistance in stipulating to the admissibility of DNA evidence linking petitioner to the alleged victim where defense was that petitioner had consensual sexual interactions), appeal dismissed, 22 F. App'x 153 (4th Cir. 2001).

To the extent that petitioner claims that his counsel should have presented another defense, he has not shown another defense was available. To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one. See, e.g., Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011).

As previously indicated, the defense presented by counsel was that the sexual intercourse was consensual. A conscious and informed decision on trial tactics cannot form the basis of an ineffective assistance of counsel claim "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Id. at 753, quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir.), cert. denied, 123 S.Ct. 549 (2002). Here, petitioner has not shown that the strategy employed by his attorney was in any way deficient. The defense was consistent with petitioner's claims that he and the victim had had sexual intercourse the night before the crime occurred. The fact that the defense was not successful and petitioner was convicted does not mean that counsel's actions were deficient. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

Petitioner's final claim of ineffective assistance of counsel is that his counsel failed to object to or move for a mistrial when the prosecution, during closing arguments, made direct and indirect remarks about petitioner's failure to testify in his own defense. He contends that had his counsel objected, a mistrial would have been granted.

Petitioner fails to identify in his federal petition the particular portion of closing arguments giving rise to his complaint. Assuming he is relying on the same argument presented in his state

habeas proceeding, petitioner refers to a portion of the prosecution's rebuttal argument in which the prosecutor stated:

> Well, state puts on an eyewitness and what do they say? "Well, we heard the witness but guess what, you didn't see no DNA. You didn't see prints. We didn't see this, we didn't see that," but you heard from an eyewitness. You put on no witness and you put on all the scientific stuff, the DNA, the fingerprints, and all that, and what do they tell you? "Oh, we saw all of that, but we didn't have a witness." So either way it go, they argue the opposite. Well, what do they say when you got both? Nothing. Nothing. When you got the DNA and you've got Tracey's testimony, and we know why we don't have prints. We know why, and he knows why too.[74]

A prosecutor's argument does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair in violation of due process. <u>Jones v. Butler</u>, 864 F.2d 348, 356 (5th Cir.1988). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986); <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1095 (5th Cir.1987). The prosecutor's remarks must be evaluated in the context of the entire trial. <u>Greer v. Miller</u>, 483 U.S. 756, 765–66 (1987) (citing <u>Darden</u>, 477 U.S. at 179); <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272, 281 (5th Cir.1985). "[It] is not enough that the prosecutors' remarks were undesirable or even universally condemned." <u>Darden</u>, 477 U.S. at 181 (citations and quotations omitted). To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." <u>Jones</u>, 864 F.2d at 356; <u>Hogue v. Scott</u>, 874 F. Supp. 1486, 1533 (N.D. Tex.1994).

---

[74] St. Rec. Vol. 4 of 6, Closing Arguments Transcript, p. 30, 3/16/10.

Comments by a prosecutor on a defendant's exercise of his Fifth Amendment right not to testify are constitutionally impermissible.  Griffin v. California, 380 U.S. 609, 615 (1965).  To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is: "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence."  (internal quotation marks omitted) United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir.1996) (quoting United States v. Collins, 972 F.2d 1385, 1406 (5th Cir.1992)).

Under the first possibility, "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark."  Id.  Under the second possibility, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so."  (citation, emphasis, and internal quotation marks omitted)  Id.  Moreover, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel."  United States v. Robinson, 485 U.S. 25, 32 (1988).

In this case, the comment made by the prosecutor during closing arguments was neither prohibited by the Due Process Clause nor in violation of the Fifth Amendment.  The prosecutor noted that there was DNA evidence and the victim's testimony supporting petitioner's guilt.  She acknowledged the defense's argument about the absence of fingerprint evidence.  She then stated, "We know why, and he knows why too."[75]  A plain reading of the words used by the prosecutor indicates that her statement was a comment relating to the evidence presented at trial, not a

---

[75] Id.

comment on petitioner's failure to testify. Specifically, the evidence at trial demonstrated that petitioner was wearing gloves at the time of the crime.

Even if the prosecutor's statement violated petitioner's constitutional rights, any such comment was harmless error. See Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir. 2003) (holding that harmless error analysis applied to a prosecutor's alleged comment on the defendant's failure to testify). The test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. Petitioner has not shown that the statement had an impact on the verdict. As indicated, the prosecutor's comment was limited. Further, the evidence was not insubstantial to have been overwhelmed by the single comment. Additionally, the jury was instructed regarding the presumption of innocence as well as the defendant's right not testify and instructed to "draw no inference from the defendant's decision not to give testimony in this case."[76] Without a showing that the comment had a substantial or injurious effect on the verdict, he has not established that the comment amounted to a constitutional error by the prosecutor. Therefore, defense counsel's failure to object or move for a mistrial did not prejudice petitioner.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

---

[76] Id., at pp. 36-37.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Ronald Reel be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[77]

New Orleans, Louisiana, this 11th day of August, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[77] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.